NEILS ANDERSON, Respondent, *v.* THE WASATCH AND JORDAN VALLEY RAILROAD COMPANY, Appellant.

1. Jurors Discharged—Not to be Called.—After jurors have been once discharged from service, they cannot again be placed upon the panel except as provided in the act of Congress, approved June 23, 1874, entitled "an act in relation to courts and judicial officers in Utah Territory."

2. Excusing Jurors Discretionary.—Excusing jurors for the term prior to calling a cause for trial, is in the sound discretion of the court.

3. Witness Allowed to Refresh his Memory.—It is not error to allow a witness to refer to a memorandum made by himself at the time of the happening of the event about which he is testifying, in order to refresh his memory, especially when he testifies that the memorandum is correct.

4. Destruction of Property by Fire from an Engine.—Under the statute which provides that "any company constructing or operating lines of railroad in this Territory shall be liable for all damage which may be sustained through destruction of property caused by fire communicated from their locomotive engines," (C. L. § 503,) proof of such destruction makes out a *prima facie* case, and the burden is then on the defendant to show that due caution and diligence was used on its part, and that the fire was not the result of its negligence.

5. Fire Communicated.—Where fire is carried from the engine by the winds to the grass and weeds, thence to the property which is destroyed, there is a "communication" of the fire from the engine, as contemplated by statute.

Appeal from the Third Judicial District Court.
The facts are stated in the opinion of the court.

*Sutherland & McBride,* for appellant.

The court below erred in ruling on the formation of a jury, by discharging twelve of the jurors summoned for the term, and requiring the selection of the jury for this action from the residue, under the supposed authority of late Territorial Legislature. We contend this action was erroneous, because:

*First*—The act of February 20, 1880, for dividing the Third Judicial District, was not signed by the Governor, and, therefore, never became a law.

*Second*—That act, even if approved, could not modify, as it was made to do, the effect and operation of the Poland bill. C. L. Utah, 55.

No memorandum of a witness imports verity; it is, as to other parties, hearsay—an unsworn statement. There are two ways, however, of verifying a memorandum which does not refresh memory, so that it will have value as evidence; first, by the witness who made it, testifying on seeing it, that he remembers making it, though he does not recall the facts noted, that he remembers that he knew all the facts when he made the memorandum; that they were recent and were fully and correctly stated from personal knowledge. Second, that it was his uniform habit and practice to make a memorandum of such facts as the memorandum in question purports to contain; that it was his invariable habit to make it at or about the time the facts occurred; to make it full and true from personal knowledge, and that he recognizes it as such a memorandum.

Testimony of either kind tends to show that the memorandum is true; the witness who thus verifies it can go no further with his testimony. If it is sufficiently verified, it is itself evidence, and may be read to the jury. *Chaffee* v. *N. S.*, 18 Wall. 541; *Ins. Co.* v, *Weide*, 9 Wall. 677; *Luce* v. *Doane*, 38 Me. 480; *Halsey* v. *Sensebaugh*, 15 N. Y. 485; *Haven* v. *Wendell*, 11 N. H. 112; *Hale* v. *Ray*, 18 N. H. 129; *Taylor* v. *Stringer*, 1 Helt. 377; *Chamberlain* v. *Carter*, 19 Rich. 188; Cliquot's Champagne, 3 Wall. 140; Fennerstein Champagne, 3 Wall. 147.

The court erred in instructions given and requests refused.

By the charge the jury was instructed that a verdict might be given for the plaintiff without proof of negligence.

This was erroneous, for thereby the plaintiff obtained a verdict on a different case from the one stated in his complaint.

Negligence is the gist of the action according to the complaint, and he was allowed to recover without proving it.

Section 503 of the Compiled Laws of Utah has not abolished the common law action for negligence. The plaintiff had his choice to bring the common law action, or found his complaint upon the statute. He elected the former remedy, and should be held to it.

Besides this, the statute itself proceeds upon the assumption of negligence, and a recovery under it would require proof of negligence, although it is not mentioned; the courts will import the requirement into it.

The theory of the charge is that a railroad company is liable from the simple fact of damage being caused in the manner specified in the statute, that there is no need of any allegation or proof that the company was in fact negligent or otherwise at fault.

The statute requires by the word "communicated," more than continuous combustion. Not long since, a newspaper paragraph announced that a fire which blazed upon a hospitable hearth, where a certain pair was conjugally united, was never extinguished until more than thirty years afterwards, when the survivor was carried to his last resting place. Suppose this fire had been kindled on the nuptial day from a glowing coal dropped by a passing engine, and on the day when death had made the house desolate, it had been consumed, and this fire aggressively reached another house and destroyed it. The latter would be burned by fire sustained by continuous combustion from the engine; but it would be absurd to say that the fire, which was finally so destructive, was communicated from the engine. Nor can it properly be said that the fire was not communicated merely on account of the length of time. Time does not affect the continuity of causation, if there is a persistence of the requisite conditions; fire will burn for all time with a steady supply of fuel.

*Tilford & Hagan*, for respondent.

The act of February 20, 1880, of the Legislative Assembly

of the Territory of Utah, was signed by George W. Emery, who was *de jure* and *de facto* Governor of the Territory at that time. The statement on appeal shows that said Emery had been for four years preceding the 1st of January, 1880, the lawful Governor of Utah Territory; that in the month of January, 1880, Eli H. Murray was appointed by the President and confirmed by the Senate, Governor of said Territory, but that at the date of the approval of said act he had not taken the oath of office, nor entered upon the duties thereof.

Upon this state of facts we contend that George W. Emery was Governor of Utah Territory on the 20th of February, 1880, and that his approval of the act in question gave it the sanction and validity of a law. Organic Act, § 2, C. L. 28; Rev. Stat. U. S., § 184, p. 326; Rev. Stat. (2d ed. 1878,) § 1877, p. 331; Rev. Stat. § 1878; 19 U. S. Stats. at Large, 43.

In our opinion section 1767, p. 314 Revised Statutes, known as the Tenure of Office Act, does not change the effect of the provisions of the statutes before cited.

As to the memorandum complained of, we insist that counsel for appellant has entirely misstated the case at bar. On p. 18 of transcript, Anderson testifies that he made the memorandum at the time; that it was and is correct, and that he remembered all that was on the paper.

A party is entitled to any relief that comes within the allegations of the complaint.

The value of the property destroyed is the gist of the action, whether it was destroyed negligently or otherwise does not matter. *Rhemke* v. *Clinton*, Utah S. Ct.; Pr. Act, § 149; *Truebody* v. *Jacobson*, 2 Cal. 283; *Savings & L. Society* v. *Thompson*, 33 Cal. 347; *Cassaci* v. *Phœnix Ins. Co.*, 28 Cal. 628; 34 Cal. 47.

This doctrine, as applicable to the case at bar, was recognized by the Supreme Court of the United States. *Grand Trunk R. R. Co.* v. *Richardson*, 1 Otto, 454.

As to the refusal of the eleventh instruction, we would state that the record does not show all the testimony, but the tran-

script shows that the fire was caused by the sparks from defendant's engine.

The question as to the liability of defendant for fires communicated, as in the case at bar, has been so well settled that the citation of authorities will answer the position taken by defendant's counsel. The Supreme Court of the United States has established the doctrine. *Grand Trunk R. R. Co.* v. *Richardson*, 1 Otto, 454.

As to the ruling of the State courts we will refer to the following authorities. *Penn. R. R. Co.* v. *Hope*, 80 Pa. St. 373, 182; *Atchison, T. & St. Fee R. R.* v. *Stanford*, 12 Kan. 354; *D. L. & Co. R. R. Co.* v. *Salmon*, 39 N. J. 299; *Clemens* v. *H. & St. J. R. R.*, 53 Mo. 666.

This case also holds that negligence will be presumed, and the burden is on the company, and has been affirmed in the following cases: *Spaulding* v. *Ch. & N. W. R. R. Co.*, 30 Wis. 110; *Burke* v. *Louisville R. R. Co.*, 7 Heisk. 451; *Kellogg* v. *Ch. & N. W. R. R. Co.*, 26 Wis. 223; *Newell* v. *R. R. Co.*, 57 N. H. 132; *Hull* v. *Sac. V. R. R. Co.*, 14 Cal. 387; *Henry* v. *S. P. & R. R. Co.*, 50 Cal. 176; *Heane* v. *S. R. R. Co.*, 50 Cal. 482; *Longabaugh* v. *V. C. & T. R. R. Co.*, 9 Nev. 271; *Ill. Cent. R. R.* v. *Phillips*, 55 Ill. 194; s. c., 49 Ill. 234.

Sherman & Redfield, after reviewing the different authorities, sum up the case and settle the question of burden and proof, as well as the liability of the railway company for fires started by its locomotive engine, regardless of the question of negligence. Sher. & Redf. on Neg. §§ 333, 334 and cases there cited; Sedgw. on Meas of Dam. (new ed.) p. 145.

BOREMAN, J., delivered the opinion of the court:

The plaintiff below (the respondent here) had his houses and other property destroyed by fire from the engines of the defendant below (appellant here) and having obtained judgment, the defendant has brought the cause to this court.

The court below discharged twelve jurors for the term, for

the reason that the counties in which they resided had been detached from the Third Judicial District and added to the First, by an act of the Territorial Legislature. The appellant alleges this to have been error, for the reason that George W. Emery, who approved the act, was not Governor at the time. We do not deem this a material question. The jurors had been discharged before this case was called, and no exception had been taken to their discharge, nor do we think there could have been in this case.

When this case was called for trial the persons discharged were not jurors, and the court, after having discharged them from service in court, could not, upon a motion, order that they be again placed upon the panel. After their discharge, they could again be put upon the panel only in the way pointed out by the act of Congress. (An Act in relation to Courts and Judicial Officers in the Territory of Utah, approved June 23, 1874.) That is, by being again entered upon the jury list prepared at the beginning of a subsequent year, and being drawn for jury service in the manner therein prescribed. Besides, to excuse a juror before he is called upon a particular case, is within the sound discretion of the court, and we do not think it was an abuse of discretion for the court to excuse from the panel of jurors summoned for the term, such as he believed would make the verdicts of doubtful validity, especially as the remaining jurors, who composed the jury in this case, were unexceptionable.

It is urged that the court below erred in ruling that witness Anderson, might, from a list of the property which did not, except in part, as appellant contends, refresh his memory, read the valuations of the property made by himself recently after the fire. Witness Anderson did not fully comprehend the English language, as is apparent from the manner of his giving testimony; but, taking his testimony altogether, it seems that he fully complied with the rule which would entitle the said list of property to be read in evidence. That he did not introduce it in evidence does not prevent his using it to re-

mind him of the facts, and to read to the jury in connection with his testimony. He was subject to cross-examination upon it. He remembered to have made the list some two days after the fire, and at the earliest moment, that the same was correct when made, although he did not recall now the facts noted. He remembers that he knew all the facts when the list was made and that they were correctly stated then from personal knowledge. All these facts, as it seems to us, appear from his testimony.

It is claimed that respondent did not show negligence on the part of appellant, and that it was necessary that he should show this fact. The statute under which this action seems to be brought, says that "any company constructing or operating lines of railroad in this Territory, shall be liable for all damage which may be sustained through destruction of property caused by fire communicated from their locomotive engines." (C. L. § 503, p. 217.) Under this statute, when the proof is made of the destruction of property by fire communicated from the engines, negligence is presumed until the contrary appears. The proof of such destruction made a *prima facie* case, and the burden was then upon the defendant (appellant) to show that there was due caution and diligence on its part, and that the fire was not the result of its negligence. But, if negligence were necessary to be shown, it seems that this was done, and that sufficient care was not practiced. See transcript, pp. 14, 15. *Grand Trunk R. R. Co.* v. *Richardson*, 1 Otto, 469, 470.

The refusal to give the eleventh request asked for by appellant was not improper. The appellant says, in its brief, that "the statute does not make the railroad company liable for a destruction of property by fire carried from the engine, but only when the fire is communicated." The distinction is too refined. If the fire was carried from the engine by the winds to the grass and weeds, and thence to the property of respondent, there was a communication of the fire from the engine, as contemplated by the statute.

There was no error in refusing the seventeenth instruction, asked by appellant. It was misleading, especially the last two lines. There was no evidence of a " secondary result from the first consequence," unless reference was had to the communication of the fire from one object to another after it left the engine, and if reference was had to such matter as a " secondary result," then the request was not a correct statement of the law governing the case, for, under the statute, the company was as responsible for such " secondary result " as for the " first consequence," the only question being as to whether such secondary result was caused by fire communicated from the appellant's engine.

Upon the whole case we see no error, and the judgment of the court below is, therefore, affirmed, with costs.

HUNTER, C. J., and EMERSON, J., concur.